**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TRUSTEES OF THE SHEET METAL
WORKERS LOCAL 28 BENEFIT FUNDS,
TRUSTEES OF THE SHEET METAL AND
AIR CONDITIONING INDUSTRY FUNDS,
TRUSTEES OF THE NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE,
TRUSTEES OF THE NATIONAL
STABILIZATION AGREEMENT OF THE
SHEET METAL INDUSTRY TRUST FUND,

        REPORT AND
        RECOMMENDATION

                Plaintiffs,        CV 08-3075 (DRH) (AKT)

      - against -

SKYE SHEET METAL, INC.,

                Defendant.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the default of Defendant Skye Sheet Metal, Inc. and entry of default judgment by the Clerk of the Court, District Judge Hurley referred this matter to me for an inquest on damages and attorneys' fees. *See* Electronic Order, October 14, 2008. Judge Hurley's Order further stated that "the scope of the foregoing reference shall be deemed to encompass such additional authority as reasonable or necessary to perform the foregoing duties and is not inconsistent with the Constitution of the United States." *Id.*

Plaintiffs are Trustees of the Sheet Metal Workers Local 28 Benefit Funds, Trustees of the Sheet Metal and Air Conditioning Industry Funds, Trustees of the National Energy Management Institute Committee, and Trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund (collectively, "Plaintiffs" or the "Funds") who brought this

action against Skye Sheet Metal, Inc. ("Skye" or "Defendant") for failure to comply with Skye's statutory and contractual obligations to Plaintiffs arising out of the Collective Bargaining Agreement ("CBA") entered into between the Sheet Metal Workers' International Association Local Union No. 28 (the "Union") and Defendant. The CBA was effective from August 1, 2005 through July 31, 2009. Plaintiffs have asserted claims for breach of the CBA in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 141, *et seq*.

Plaintiffs seek an award of unpaid fringe benefit contributions for the period November 1, 2006 through January 30, 2008, as well as interest and costs.[1] According to Plaintiffs' unchallenged allegations, the full amount owed, including principal contributions, interest, and costs, totals $45,099.80. *See* Decl. of Dana L. Henke in Supp. of Pltfs.' Mot. for Summ. Judg.[2] and Revised Aff'm of Statement of Damages ("Henke Decl.") [DE 11].

Based upon the information submitted by Plaintiffs and for the reasons stated below, the Court finds that Plaintiffs are entitled to the relief requested in their motion to the extent set forth in this Order. I respectfully recommend to Judge Hurley that damages be awarded to Plaintiffs as follows: (1) $32,869.43 for unpaid fringe benefits, (2) $11,840.37 in interest on the unpaid fringe benefits, and (3) $390 in court costs and disbursements, for a total sum of $45,099.80.

---

[1] Initially, Plaintiffs also requested an award of attorneys' fees [DE 4, 9]. However, as discussed *infra*, Section III(A)(3), pursuant to their most recent submissions in support of damages [DE 11], Plaintiffs no longer seek an award of attorneys' fees.

[2] Although Plaintiffs incorrectly caption their Motion as an application for Summary Judgment, the submissions are clearly in response to this Court's Inquest Order [DE 8] and contain the documentation and information necessary to support Plaintiff's claims for damages here. Accordingly, the Court treats Plaintiffs' papers as submissions in support of their motion for an award of damages.

## II. BACKGROUND

This action was commenced in June 2008 by the Trustees of the Funds. The Funds are jointly administered employee labor-management trust funds established and maintained pursuant to the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), and are multi-employer employee benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(1), (2), (37)(a). *See* Compl. [DE 1, ¶ 1].

Defendant Skye is a New York corporation authorized to do business in New York. In addition, Defendant is an "employer" within the meaning of Sections 3(5) and 515 of ERISA, 29 U.S.C. § 1002(5), and is an "employer in an industry affecting commerce" pursuant to Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185. Compl. ¶ 10; Henke Decl. ¶ 3. Pursuant to Article XII, Section 15 of the CBA, Defendant was obligated to make fringe benefit contributions to the Funds in specified amounts based upon the number of hours worked by the employees covered under this CBA. A complete copy of the CBA[3] is annexed as Exhibit A to the Affidavit of John McGrath in Support of Damages ("McGrath Aff.") [DE 11]. Plaintiffs allege that between November 1, 2006 and January 30, 2008, Defendants failed to make fringe benefit contributions for work that was performed by various members of the Union under the terms of this CBA. Compl. ¶ 15; McGrath Aff. ¶ 2.

Plaintiffs filed this action on July 28, 2008. The Summons and Complaint were served on Defendant through the New York Secretary of State on August 6, 2008, and Plaintiffs filed proof of service with the Clerk of this Court on August 22, 2008. Henke Decl. ¶ 7; Affirm. of

---

[3] Although Paragraph 2 of the McGrath Affidavit states that only the pertinent parts of the CBA are annexed as Exhibit A, it appears that the entire Agreement is included. A complete copy of the CBA is likewise annexed as Exhibit A to an earlier Declaration by Plaintiffs' outside counsel in support of damages [DE 9, Ex. A].

Dana L. Henke in Supp. of Pltf.'s Statement of Damages (submitted in support of Pltf.'s Mot. for Default Judgment [DE 4]) ("Henke Aff."), ¶ 7, Ex. B; *see also* DE 3. The deadline for Defendant to answer, move or otherwise respond to the Complaint was August 26, 2008, and Defendant did not make any request for an extension of this deadline. *See* DE 3; DE 4, Ex. B. Defendant did not file an answer, motion or other response to the Complaint by the deadline. To date, Defendant still has not done so. By Motion dated September 17, 2008, Plaintiffs moved for entry of a default judgment [DE 4]. A Certificate of Default was entered by the Clerk of this Court on September 22, 2008 [DE 5].[4] Judge Hurley then issued an electronic order on September 23, 2008 directing Defendant to serve and file opposition papers before October 10, 2008 and further directing Plaintiffs to serve a copy of the Order on Defendant and to file proof of service on ECF. Also on September 23, 2008, Plaintiffs filed a certificate of service, stating that they served the Certificate of Default upon Defendant via certified, mail return receipt requested, and first class mail [DE 6]. This matter was referred to me by Judge Hurley to determine the damages, if any, to which Plaintiffs are entitled.

## III.    DISCUSSION

"It is well settled that, once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.,* No. 06 CV 2953, 2007 WL 2712314, at *2 (E.D.N.Y. Sept. 13, 2007) (citing *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993)); *Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.

---

[4] The Clerk's Office issued the Clerk's Certificate of Default and mailed a copy to Defendant on September 22, 2008. *See* DE 5. That mail was returned as "undeliverable" on October 2, 2007. *See* DE 7.

1992); *Time Warner Cable of New York City v. Barnes*, 13 F. Supp. 2d 543, 547 (S.D.N.Y.1998)). However, the court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (citations omitted). "The Second Circuit has approved the holding of an inquest by affidavit, without a hearing, 'as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment.'" *Id*. (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 1009 F.3d 105, 1111 (2d Cir. 1997)).

Plaintiffs submitted the following documents in support of an award of damages: the Affidavit of John McGrath, Funds Administrator, in Support of Plaintiffs' Damages [DE 11]; the Declaration of Dana L. Henke, outside counsel for Plaintiffs, in Support of the Revised Statement of Damages [DE 11]; a complete copy of the CBA [DE 11, Ex. A]; and a Revised Statement of Damages [DE 11, Ex. B]. As discussed above, Plaintiffs also made earlier submissions, including the Henke Affirmation in Support of Plaintiffs' Statement of Damages (submitted as part of Plaintiffs' Motion for Default Judgment [DE 4]), along with a Statement of Damages [DE 4]; certain sections of the CBA [DE 4, Ex. A]; Plaintiffs' Summons and Complaint and proof of service of the same on Defendant [DE 4, Ex. B]; and the Funds' spread sheet summarizing the Employer reports of contributions owed to the Funds for the relevant period [DE 4, Ex. C]. Thereafter, Plaintiffs submitted the Henke Declaration in Support of Plaintiffs' Motion for Summary Judgment [DE 9], along with a revised Statement of Damages [DE 9]; a complete copy of the CBA [DE 9, Ex. A]; the Employer reports of contributions owed to the Funds and the Funds' summary thereof [DE 9, Ex. B]; a letter dated April 2, 2008 from the Funds' auditor [DE 9, Ex. C]; and a Revised Statement of Damages [DE 9, Ex. D]. The Court

5

finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. Thus, the following discussion analyzes the amount of damages to which Plaintiffs are entitled, based upon the information set forth in Plaintiffs' submissions.

### A. Damages For Unpaid Contributions

Plaintiffs seek to recover damages of $32,869.43 for unpaid fringe benefits, $11,840.37 in interest on the unpaid fringe benefits, and $390 in court costs and disbursements, for a total sum of $45,099.80.

#### 1. Principal

Plaintiffs seek to recover unpaid fringe benefits earned by the Union members covered under the CBA between November 1, 2006 and January 30, 2008. Plaintiffs allege that Defendant entered into the CBA, was required to make certain contributions in accordance with the terms of that agreement, and failed to do so. In light of Defendant's default, these allegations are accepted as true and Defendant is liable for the unpaid fringe benefits.

Plaintiffs request unpaid fringe benefits in the amount of $32,869.43. In support of this request, Plaintiffs have submitted the Employer Reports of Contributions to the Funds ("Employer Reports") [DE 9, Ex. B], which reflect monies owed by Skye as the Employer to the Funds on a weekly basis[5] for the period November 1, 2006 through January 30, 2008. McGrath Aff., ¶ 5; DE 9, Ex. B. The Employer Reports are prepared by the Funds Administrator and his staff in the ordinary course of business, based upon data provided by Skye in its Employer Remittance Reports, which information is then entered into the Funds' computers. McGrath

---

[5] Article XII Section 11 of the CBA requires the Employer to make all contributions on a weekly basis.

Aff., ¶ 5; Henke Aff. ¶ 9. Plaintiffs have also submitted a summary of these Employer Reports (the "Funds Summary"), which was similarly prepared by the Funds Office. *Id*., ¶ 6; DE 4, Ex. C. The Funds Summary is a spreadsheet which shows the contribution amounts Defendant was required to pay each week under the CBA for the period November 1, 2006 through May 28, 2008 (although January 30, 2008 was the last date on which Defendant incurred an obligation to make these contributions). *Id*. The last line of the Summary reflects the total amounts owed by Defendant for each of the fringe benefit funds. *Id*.

Both the Employer Reports and the Funds Summary show delinquent fringe benefit contributions in the amount of $32,869.43, which Defendant has refused to pay despite its contractual obligation to do so. Accordingly, I respectfully recommend to Judge Hurley that damages be awarded in favor of Plaintiffs in the amount of $32,869.43 for the unpaid fringe benefit contributions.

### 2. Interest On Unpaid Contributions

Under ERISA, the Funds are entitled to recover interest on the unpaid fringe benefits at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 2007 WL 2712314, at *3, n.4 (quoting 29 U.S.C. § 1132(g)(2)). According to Plaintiffs, the CBA requires payment of interest at a rate of two percent (2%) per month on all outstanding and unpaid fringe benefit contributions. McGrath Aff., ¶ 7; Henke Aff. ¶ 11. That assertion is confirmed in the following section of the CBA:

> All delinquent contributions shall bear interest of two percent (2%) per month, excluding interest on arrears in reconciliation, which are ten percent (10%) or less. There shall be a five (5) day grace period before the interest shall commence to accrue. The employer shall receive written notice of delinquency. Interest shall run from the end of the grace period . . . .

McGrath Aff., Ex. A (CBA, Art. XII, § 15). Plaintiffs maintain they are owed interest "for the period November 1, 2006 through January 30, 2008 calculated through September 2008." McGrath Aff. ¶ 7; *see also* Henke Decl. ¶ 11; DE 11, Ex. B (Revised Statement of Damages). The Court notes that Plaintiffs actually used August 31, 2008 as the cut-off date for the accrual of interest (*i.e.*, interest was calculated through August 31, 2008, not through September 2008, as stated by Plaintiffs). It appears that this cut-off date is used because Plaintiffs filed their Motion for Default Judgment [DE 4] on September 17, 2008.

Plaintiffs assert they are entitled to interest in the amount of $11,840.37.[6] Plaintiffs calculated this number by first arriving at the amount of unpaid benefit contributions owed by Defendant for a given month, and then multiplying that amount by 24%,[7] which equals the amount of *annual* interest due on that month's outstanding contributions. Plaintiffs divided that total by 12 to arrive at the monthly interest due on that month's outstanding contributions.[8]

---

[6] The Court notes that in previous submissions [DE 4, 9], Plaintiffs requested interest in the amount of $11,695.55. In the Statements of Damages annexed to those submissions, Plaintiffs inadvertently omitted the amount of interest owed for delinquent contributions for April 2007. This is corrected in Plaintiffs' most recent submission [DE 11], which reflects $144.82 in interest owed on the April 2007 unpaid contributions.

[7] At two percent per month, the annual interest rate is 24%, as provided in the CBA.

[8] The Court notes that the amount of monthly interest due on a given month's outstanding contributions can also be determined by multiplying the amount of unpaid contributions by 2% (rather than multiplying by 24% and then dividing by 12).

Finally, Plaintiffs multiplied the monthly interest amount by the number of months for which interest accrued (*i.e.*, the number of months until September 2008),[9] to determine the total interest earned on that month's delinquent contributions. Plaintiffs' Revised Statement of Damages [DE 11] reflects these calculations for each month during the relevant period of November 2006 to January 2008, as follows:

| Month | Delinquent Contributions | Calculation | Interest Owed |
|---|---|---|---|
| **11/06** | $9,994.97 | x 24% = $2,398.79 / 12 = $199.89 x 21 = | **$4,197.88** |
| **12/06** | $7,071.01 | x 24% = $1,697.04 / 12 = $141.42 x 20 = | **$2,828.40** |
| **1/07** | $3,874.86 | x 24% = $929.97 / 12 = $77.49 x 19 = | **$1,472.31** |
| **2/07** | $2,692.70 | x 24% = $646.24 / 12 = $53.85 x 18 = | **$969.37** |
| **3/07** | $2,761.70 | x 24% = $662.80 / 12 = $55.23 x 17 = | **$938.97** |
| **4/07** | $452.57 | x 24% = $108.61 / 12 = $9.05 x 16 = | **$144.82** |
| **5/07** | $905.14 | x 24% = $217.23 / 12 = $18.10 x 15 = | **$271.54** |
| **6/07** | 0 | — | **0** |
| **7/07** | 0 | — | **0** |
| **8/07** | $2,883.62 | x 24% = $692.06 / 12 = $57.67 x 12 = | **$692.06** |
| **9/07** | 0 | — | **0** |
| **10/07** | 0 | — | **0** |
| **11/07** | 0 | — | **0** |
| **12/07** | $621.60 | x 24% = $149.18 / 12 = $12.43 x 8 = | **$99.45** |

---

[9] Plaintiffs calculated the amount of interest due on a given month's outstanding contributions beginning on the first day of the following month, which the Court assumes is done to comply with the CBA's requirement that Plaintiffs first provide Employers with written notice of the delinquency, and that interest begins to accrue only after the running of a five-day grace period. *See* McGrath Aff., Ex. A (CBA, Art. XII, § 15).

| 1/08 | $1,611.26 | x 24% = $386.70 / 12 = $32.22 x 7 = | $225.57 |
|---|---|---|---|
| | | **TOTAL INTEREST OWED:** | **$11,840.37** |

Plaintiffs' calculations of interest are correct and are done pursuant to the rate set by the CBA. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded interest on delinquent benefit contributions for the period November 1, 2006 through January 30, 2008, calculated through August 31, 2008, in the amount of $11,840.37.

### 3. Attorneys' Fees and Costs

Here, Plaintiffs seek reimbursement for court costs and disbursements. "An award of costs and reasonable attorney fees, in an action such as this, to recover unpaid union fringe benefit contributions is mandatory." *Mason Tenders Dist. Council Welfare Fund.*, 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. Jun. 8, 2005) (citing, *inter alia*, 29 U.S.C. § 1132(g)(2)). First, Plaintiffs seek costs and disbursements in the amount of $390. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (citation omitted). Plaintiffs' requested costs and disbursements consist of $350.00 paid to the Clerk of this Court for the filing fee in this action, and $40.00 paid to the New York Secretary of State for the statutory fee incurred in serving Defendant. Henke Decl. ¶ 12; Revised Statement of Damages [DE 11]. Thus, it is clear that these costs were incurred in relation to the filing and service of the Complaint in this action. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded costs in the amount of $390.

Plaintiffs do not seek an award of attorneys' fees here. Initially, in the Motion for Default Judgment [DE 4], Plaintiffs sought attorneys' fees in the amount of $2,000. In support of this

request, the Henke Affirmation [DE 4] included a "summary of the total hours spent on various tasks" by Ms. Henke (outside counsel to Plaintiffs) and a paralegal. This summary contained the date each task was performed, a brief description of that task, and the amount of time spent on the task. The summary did not provide the hourly rates charged by counsel and the paralegal, and it did not state who performed each task.

Pursuant to this Court's Inquest Order [DE 8], Plaintiffs were directed to submit "[t]he required documentation in support of any costs and attorneys' fees claimed, including contemporaneous time records." DE 8 (citation omitted). The Inquest Order further directed that "[f]ailure to provide testamentary and documentary support sufficient to satisfy the Court that the damages sought are warranted will result in a recommendation that no damages be awarded." *Id*. In their subsequent submission, Plaintiffs stated they sought attorneys' fees in the amount of $1,975.00 [DE 9, Ex. D], which was a $25 reduction from the amount previously sought in the Motion for Default [DE 4]. However, Plaintiffs did not submit the necessary documentation to support the application for attorneys' fees. Rather, the Henke Declaration in Support of Plaintiffs' Motion [DE 9] contained only a "summary of the total hours spent on various tasks" by Ms. Henke and a paralegal. Again, this summary contained the date each task was performed, a brief description of that task, and the amount of time spent on the task, but did not state the hourly rates charged or who performed each task. This summary was insufficient to substantiate Plaintiffs' request for an award of attorneys' fees under the existing case law. Thus, the Court subsequently informed Plaintiffs' counsel that in order to obtain an award for attorneys' fees, Plaintiffs must submit the requisite documentation, including contemporaneous time records. However, in their subsequent submission [DE 11], Plaintiffs' did not include any documentation

to support a request for attorneys' fees and, in fact, omitted any request for such an award. *See* DE 11.

Under the law of the Second Circuit, it is well established that the party seeking an award of attorneys' fees "bears 'the burden of documenting the hours reasonably spent by counsel,' . . . and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done.'" *Cho v. Koam Med. Servs. PC*, 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (internal citations and alteration omitted) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Because Plaintiffs have not provided any documentation in support of an award of attorneys' fees which comports with these requirements, I have no alternative but to recommend to Judge Hurley that attorneys' fees not be awarded in this case.[10]

## IV. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Hurley that Plaintiffs be awarded damages in the following amounts:

- $32,869.43 for unpaid fringe benefits;
- $11,840.37 in interest on the unpaid fringe benefits; and
- $390 in court costs and disbursements.

Therefore, the total amount of recommended damages is $45,099.80.

****

---

[10] I respectfully recommend to Judge Hurley that if Plaintiffs' counsel can provide the missing information, the Court reconsider this issue. However, such information should be provided no later than ten (10) days from the date of this Order or the right to make such submission should be deemed waived.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within ten (10) days of service. Each party has the right to respond to the other's objections within ten (10) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley and to the Chambers of the undersigned. Any request for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
September 24, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge